# COPY

1  Alan Himmelfarb
2  KamberEdelson, LLC
   2757 Leonis Blvd.
3  Vernon, California 90058-2304
4  Telephone: (323) 585-8696
   ahimmelfarb@kamberedelson.com
5
6  Scott A. Kamber
7  KamberEdelson, LLC
   11 Broadway. 22nd Floor.
8  New York, NY. 10004
9  Telephone: (212) 920-3072
   Fax: (212) 202-6364
10 skamber@kamberedelson.com
11
   Attorneys for Plaintiff Melissa Thomas
12

**FILED**

2000 SEP 22 P 2: 13

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

13
14       **IN THE UNITED STATES DISTRICT COURT**
         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15
16  Melissa Thomas, an individual, on          **C08  04421** PVT
    behalf of herself and all others
17  similarly situated,
18  Plaintiff,                                  COMPLAINT
19       v.                                     BY FAX
20  Electronic Arts, Inc., a Delaware           JURY DEMAND
    corporation, and DOES 1-75
21       Defendants.
22
23
24
25
26
27
28

COMPLAINT
1

## CLASS ACTION COMPLAINT

Plaintiff Melissa Thomas ("Plaintiff"), by her attorneys, states this complaint against Defendant ELECTRONIC ARTS, INC. ("Electronic Arts" or "EA"). Plaintiff's allegations are based on information and belief, except to her own actions, which are based on knowledge. Plaintiff's allegations on information and belief are based on the investigation of her counsel, and facts that are a matter of public record.

## NATURE OF THE CLAIM

1.      This is a class action concerning the **Spore** computer game ("Spore") published by Electronic Arts. Spore is advertised and sold as a game for the PC or Macintosh.   When consumers make their purchase of Spore, they are told that they are purchasing "an exciting new simulation game that lets you develop your own personal universe." Purchasers are invited to install and use the game on their computers.

2.      What purchasers are *not* told is that, included in the purchase, installation, and operation of Spore is a second, undisclosed program.  The name of the second program is SecuROM, which is a form of Digital Rights Management (DRM) for computer games.  Although consumers *are* told that the game uses access control and copy protection technology, consumers are not told that this technology is actually an entirely separate, stand-alone program which will

download, install, and operate on their computers, along with the Spore download. Consumers are given no control, rights, or options over SecuROM. The program is uninstallable. Once installed, it become a permanent part of the consumer's software portfolio. Even if the consumer uninstalls Spore, and entirely deletes it from their computer, SecuROM remains a fixture in their computer unless and until the consumer completely wipes their hard drive through reformatting or replacement of the drive.

3. This action is brought on behalf of a class of all consumers globally who have purchased the Spore computer game. Electronic Arts' intentionally did not disclose to any such purchasers that the Spore game disk also possessed a second, hidden program which secretly installed to the command and control center of the computer (Ring 0, or the Kernel), and surreptitiously operated, overseeing function and operation on the computer, preventing the computer from operating under certain circumstances and/or disrupting hardware operations. These actions constitute violations of the California Consumer Legal Remedies Act, Civil Codes § 1750 et seq. and California's Unfair Competition Law, Business & Professions Code §§ 17200, et seq., and further constituted trespass to chattels.

**INTRODUCTORY ALLEGATIONS**

4. This consumer class action arises from defendant Electronic Arts Inc.'s ("Electronic Arts" or "EA" or "defendant"), engaging in deceptive and

unlawful conduct in designing, marketing, distributing, and selling a computer game disk that contains undisclosed and unconsented to Digital Rights Management (DRM) technology.

5.      Electronic Arts, Inc. (NASDAQ: ERTS) is a worldwide American developer, marketer, publisher, and distributor of computer and computer games. Established in 1982, the company was a pioneer of the early home computer games industry.  Originally, EA was a home computing game publisher.  In the late 1980s, the company began developing games in-house and supported consoles by the early 1990s. EA later grew via acquisition of several successful developers. By the early 2000s, EA had become one of the world's largest third-party publishers.  In 2007 EA ranked 8th on the list of largest software companies in the world.  In May 2008, the company reported net annual revenue of US$4.02 billion in fiscal year 2008.

**The Spore Computer Game**

6.      The full version of the Spore Computer game was released on September 4, 2008 in Australia and the Nordic region.   The game was released September 5, 2008 in Europe, Japan, South America and New Zealand; and was released on September 7, 2008 in North America and Asia Pacific territories. Spore is also available for direct download from Electronic Arts.

7.      Spore allows a player to control the evolution of a species from its

beginnings as a unicellular organism, through development as an intelligent and

social creature, to interstellar exploration as a spacefaring culture.  It has drawn

wide attention for its massive scope, and its use of open-ended gameplay and

procedural generation.

8.    The marketing materials for the game state:

>    Create universal wonder in Spore, an exciting new simulation
>    game that lets you develop your own personal universe. Work
>    your way through five evolutionary phases, including Cell,
>    Creature, Tribe, Civilization and Space, that offer unique
>    challenges, thrills and goals. For example, you can start in Cell
>    and nurture one species from a simple aquatic organism all the
>    way until it becomes a sentient life form. Or you can jump right
>    in and begin building tribes and civilizations on multiple planets.
>    What you do with your universe is totally up to you.
>
>    The powerful creation tools of Spore are easy to use, allowing
>    you to effortlessly design every aspect of your universe.
>    Creatures, vehicles, building and even starships are all within
>    your grasp. While Spore is a single-player game, your creations
>    and other players' creations are automatically shared between
>    your galaxy and theirs, offering a nearly limitless number of
>    worlds to visit and enjoy. You can also go online to view the
>    incredible things other players have made and can even pull those
>    items into your universe. Spore gives you the chance to make
>    worlds and beings that evolve, grow and delight you every step
>    of the way.
>
>    The creators of The Sims present the next big bang - SPORE.
>    Create your unique creature and guide it on an epic journey
>    through a universe of your own creations. Play any way you
>    choose in the five evolutionary phases of Spore: Cell, Creature,
>    Tribe, Civilization, and Space. How you play and what you do
>    with your universe is entirely up to you. Spore gives you a
>    variety of powerful yet easy-to-use creation tools so you can

create every aspect of your universe: creatures, vehicles, buildings, and even starships.

**SecuROM  Digital Rights Management (DRM) Technology**

9.      The Spore game must be installed from the gamedisk (cd) onto a computer in order for the game to function.

10.     When a user installs the Spore game, a second program, SecuROM, is automatically and secretly installed along with the Spore game.

11.     SecuROM installs itself to The Kernel of the computer (the administrative command and control center of the computer).  Once installed, SecuROM then allows itself to access to all parts of the computer.

12.     The operating system of a computer utilizes different parts or levels of the computer, determined by the need of the software for access and control over different aspects of the hardware or software.  These parts are commonly called Ring 0, 1, 2 and 3.  Ring 0 is sometimes referred to as the Kernel. The Kernel is usually used by the Operating System to run the computer and it has access to everything on the computer.  Ring 3, which is the normal zone used by Software has much lower permissions.  SecuROM represents that it installs itself to Ring 3 (by having a part of itself called the UA7service.exe written to Ring 3), when in fact it installs its primarily operational code to Ring 0.

13.     Writing itself to the Kernel of the computer allows SecuROM to have

control over all other programs and processes on the computer, including equipment that computer users are legally permitted and entitled to possess (e.g., two cd/dvd drives on the computer).

14.     Like any program, SecuROM uses computer resources. It uses memory, processor cycles, and program handles (leaving less for any uses the owner might have had planned for their computer). To transmit information back to EA, SecuROM uses the computer owner's internet connection. Whenever it downloads, installs, or runs, SecuROM uses resources belonging to the computer owner, which, by definition, make those resources unavailable for other tasks. Like any program, SecuROM takes up space on the user's hard drive. Like any program, SecuROM offers computer users another opportunity for something to go wrong, if it failed. And, just like any other program, SecuROM did have its failures.[1]

---

[1]     See, for example, the following reviews from the amazon.com website:

I installed this game on my fiance's computer (a fancy pants Alienware )that runs Vista smoothly and has more than the minimum required to play the game. The game itself runs fine, even with all settings on high, but that is not what it destroyed. The SecuROM disabled his firewall, anti-virus and much of the functionality of Vista. He can no longer install any other programs to his computer, or use his task manager because his entire computer freezes up. After many months of being problem free on Vista, he now gets regular visitation from the BSOD-only after this game was installed. He's a computer engineer and he thought it might be the game. He called Windows tech support, and they came to the same conclusion. Meanwhile I've been on hold with EA's technical support for a good half hour so far (I've been typing this while waiting with brain numbing techno hold music). I figure they owe me another install as it appears that fixing his computer would require a non-refunding uninstall or clean installation of Vista with a disc image restore dated pre-Spore.

15.     No notification of the nature, function, and operation of the SecuROM program was provided to Spore purchasers.  No notice of its secret installation was provided to persons who loaded and installed the Spore computer game.  No one was told that it was a separate program installing to the Kernel of the computer and that it could not be uninstalled.

16.     At EA's customer support website, EA responded in detail to the question: "How will Digital Rights Management (DRM) work with Spore and Spore Creature Creator?:"

> **QUESTION**
> How will Digital Rights Management (DRM) work with Spore and Spore Creature Creator?
>
> **Answer**
>
> The DRM solution implemented for the *Spore* and *Spore Creature Creator* changes copy protection from being key-disc based, which requires authentication every time you play the game by requiring a disc in the drive, to a one-time online authentication. This system has

---

http://www.amazon.com/review/R1I4LUUSEQI4I?ref=cm_srch_res_rtr_alt_2

   tried out spore creature creator and really liked it so I went and bought the full version. I didn't know that it also came with securom when I installed the software to play spore securom was also installed with it. At first everything seemed fine, and I was enjoying spore, but then my computer started locking up and telling me I wasn't authorized. I uninstalled spore, but securom is still there! I can't get rid of it and now my whole computer doesn't work. Please don't buy this game. it's not worth the lost hours. I really wish they had an Xbox version so that I wouldn't have destroyed my computer trying to play a game. This is just evil.

http://www.amazon.com/review/R2RK9S7XLQ7PII?ref=cm_srch_res_rtr_alt_12

the added benefit of allowing you to seamlessly play your game without requiring the game disc in the drive.

**KEY POINTS**:

- This system allows you to authenticate your game on three computers with the purchase of one disc. *EA* Customer Service is on hand to supply any additional authorizations that are warranted. This will be done on a case-by-case basis by contacting Customer Support.
- Games are authorized to your machine when you first install and launch the game.
- We've all had those times when the discs get lost or scratched, and you can't play a game you've bought because you need a working disc in the drive. With this new system, players will no longer need the disc to play the game, but can instead simply retain the disc as backup for reinstallation.

**FAQ:**

**Q: What is the difference between the old PC disc authentication solution and the new online model?**
A: Two things have changed:

- First, authentication of your game disc has changed from a physical format to an online format, eliminating the need to have a disc in the drive when playing.
- Second, with online authentication, consumers now connect to the Internet the first time the game is launched and are only required to reconnect if they are downloading new game content.

**Q: How will the game authenticate now?**
A: We authenticate your game online when you install and launch it for the first time.

**Q: Do I have to reauthenticate after the first time my game is launched?**
A: Reauthentication is required only if you make significant changes to your PC's hardware, reformat your hard drive, or in some cases,

upgrade your Operating System. Multiple installations of the game on the same computer do not count against the number of computers the game can be installed on.

**Q: What are the benefits of online authentication versus the disc-based model?**
A: The new system means you don't need to have the game disc in your computer in order to play. Losing a disc will no longer keep you from enjoying a game you already have installed.

**Q: Am I able to play my game on more than one computer? Do I need the disc for that?**
A: You'll be able to install and play your game on up to three computers without the need of the game disc. Your computer is authorized after installation and the initial launch of the game.

**Q: Will I still be able to play my game offline?**
A: Yes, you can play offline, however, we do hope that you will play online. Sharing creatures, buildings, and vehicles with other players is something that is unique to *Spore* and *Spore Creature Creator*, and is one of the coolest features of the game.

**Q: What happens when I've reached the maximum number of computers for my game and I need more? (Due to computer upgrades, theft, crashes, etc.)**
A: *EA* Customer Support is on hand to supply any additional authorizations that are warranted. This will be done on a case-by-case basis by contacting Customer Support.

**Q: Why are Maxis and *EA* implementing this new authentication process?**
A: This solution serves to protect our software from piracy. It has the added benefit of allowing you to activate your game on multiple machines without needing the game disc in the drive when playing the game.

http://support.ea.com/cgi-bin/ea.cfg/php/enduser/std_adp.php?p_faqid=19743

17.    Nowhere in any of EA's discussions, responses or explanations of its DRM did EA disclose that the Spore disk contained a separately installed, stand alone, uninstallable DRM program which would install itself to the command and control center of the computer and oversee function and operation on the computer, preventing certain user actions, preventing certain user programs from operating, or disrupting hardware operations. In fact, all of EA's representations about its Spore DRM talk in terms of "online authentication" – as if all DRM protection was entirely online-based and resident at EA's website, instead of being program-based at the operating system level of the user's own computer. These representations by EA are clearly significant misrepresentations of EA's DRM regime given the fact that the actual process involves a separate DRM program permanently installed onto the hard drive of the user's computer.

18.    As of September 22, 2008, almost 3,000 consumers have posted reviews of the Spore computer game to the Amazon.com website. More than 2,500 of those reviews have given the game a "one star" review (the lowest rating Amazon permits), with the vast majority of the low ratings due to the DRM regime that the Spore computer game universally imposes upon its users.

19.    The following are representative excerpts of a tiny percentage of the reviews at the Amazon.com review website:

We don't want DRM crud on our computer because it is essentially a

form of spyware or even could be considered a virus. I didn't even
know about SecuROM until I read these reviews and found the folder
sitting HIDDEN on my computer. I'm not paying EA to SPY on my
legit use of the software they released.
http://www.amazon.com/review/R359ZRMVQM7Z7C/ref=cm_srch_r
es_rtr_alt_2

This game installed virus/spyware "DRM" software on my computer
WITHOUT MY PERMISSION that has slowed down my entire
system significantly. The same thing happened to three other people I
know who purchased this game. My recommendation: Avoid Spore at
all costs, unless you want your computer's speed and performance
severely slowed, even when the game isn't playing.
http://www.amazon.com/review/R1BE33X9NCLQ1H/ref=cm_srch_re
s_rtr_alt_3

The DRM for the game utilizes securom which is essentially a virus
that installs itself without warning when you install the game. There is
no way to completely remove it without reformatting and it is
constantly running in the background if not removed. Sucking up
computer resources.
http://www.amazon.com/review/R1BZG1UUXY49N7/ref=cm_srch_r
es_rtr_alt_2

SecuROM installs itself without any warning on the box, EULA, or
install prompts. What's more is that it won't uninstall when you
uninstall the game. You need to net search to figure out how to get rid
of it. SecuROM is there to gather info about your computer to look for
hardware changes and then decrement your install limit.
http://www.amazon.com/review/R2DA7RL7YB59M6/ref=cm_srch_r
es_rtr_alt_1

Avoid all new EA games as you will be dealing with the same
securom crap.  another problem with securom, it delays your system
startup due to a kernel level driver that installs which it uses to
monitor the hardware and software in your pc  (if and you cant disable
it with out damaging windows, the only way to disable it is to
manually uninstall the securom, which is a long and annoying
process)

http://www.amazon.com/review/R3B1X1JTE11L6/ref=cm_srch_res_rtr_alt_1

I feel that there should be a federal lawsuit against EA and SecuROM mandating removal of the Malware blatantly installed at the kernel level of the machine.
http://www.amazon.com/gp/pdp/profile/A8BRO663FCR7D/ref=cm_cr_rdp_pdp

Bundled with the game is a mandatory install of spyware labeled DRM. This limits any single copy from being installed more than 3 times across ANY PC. So after 3 times, thats it, your done, go call EA and try to get hassled over the legitimacy of your own copy. If you want to take piracy countermeasures in this electronic sharing age, then fair enough. But dont couple the game with a "sniffer" software that takes up my resources. What happens if I have 4+ games that all do this? Then my computer is being bogged down unneccessarily.
http://www.amazon.com/review/R3445W9PCYSXYM/ref=cm_srch_res_rtr_alt_4

The critical response has been largely good. However, each and every one of those reviewers now has EA sponsored spyware, a glorified virus, that they cannot remove, installed at super user level(In layman's terms, that means the DRM program outranks YOU in your computer hierarchy.).
http://www.amazon.com/review/R6CQ2EH00AN2H/ref=cm_srch_res_rtr_alt_11

The game is mediocre at best, but what kills it is unauthorized DRM software, limitations not listed in the End User License Agreement or on the box, and offers to upsell you to what should have come in the box in the first place. The game installs software which is nigh impossible to remove from your machine. I have already been in contact with a lawyer over the issue, and I can't be the only one. Spyware and false advertising - way to go EA! You have ensured I will never buy another of your products ever again. Here's hoping you pay through the nose in damages to everyone jilted by this trainwreck of a piece of software.
http://www.amazon.com/review/R5BPO4KP9ACU0/ref=cm_srch_res

_rtr_alt_24

I have been watching this game for several months and was very
excited to play it, so much so that I preordered it and made the grand
mistake of installing the creature creator that was infested with
securom on both of my PCs. Unfortunately that secret file (virus) that
EA slipped into my computer without my permission is now
permanently imbedded without nothing I can do to remove it. How
will it and when will it affect my computer, I dont know, but I dont
like the idea of waiting for it to conflict like if im waiting on
Doomsday. I never gave you permission EA, and I will never grant
you such permission to implement securom or any virus into my
computers which means I will not buy spore or any of your games
until you start treating your customers with respect.
http://www.amazon.com/review/R3C7USVII5J2KWY/ref=cm_srch_r
es_rtr_alt_1

*See* all reviews at:
http://www.amazon.com/review/product/B000FKBCX4/ref=pr_all_summary_cm_
cr_acr_txt?_encoding=UTF8&showViewpoints=1

20.    Plaintiff brings this class action on behalf of a global class of

consumers who purchased Electronic Arts' Spore computer game which contained

an undisclosed, secret, separately installed, stand alone, uninstallable DRM

program which would install itself to the command and control center of the

computer and oversee function and operation on the computer, preventing certain

user actions, preventing certain user programs from operating, or disrupting

hardware operations.  Plaintiff and the proposed class members would not have

purchased the Spore computer game and/or paid as much for it had they known the

truth about the product.

21.     Plaintiff seeks actual damages, individual restitution, equitable relief, civil penalties, costs and expenses of litigation, including attorneys' fees, and all further relief available.

**VENUE AND JURISDICTION**

22.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The aggregate claims of plaintiff and the proposed class members exceed the sum or value of $5,000,000.00.

23.     Electronic Arts is a Delaware corporation headquartered in California and is a citizen only of the states of California and Delaware.  Plaintiff is a citizen and resident of Maryland, and asserts claims of behalf of a proposed class whose members are scattered throughout the world, and throughout the fifty states (including the 48 states besides California and Delaware) and the U.S. territories: there is minimal diversity of citizenship between proposed class members and the Defendant.

24.     This Court also has personal jurisdiction over defendant because (a) a substantial portion of the wrongdoing alleged in this complaint took place in this state, (b) defendant Electronic Arts' principle place of business is located in this state, and (c) defendant is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally availed itself of the markets in this state through the promotion, marketing, and sale of its product in this state,

to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c).  A substantial portion of the events and conduct giving rise to the violations of law complained of herein occurred in this District, defendant Electronic Arts Inc.'s principal executive offices and headquarters are located in this District at 209 Redwood Shores Parkway, Redwood City, CA 94065, and defendant conducts business with consumers in this District.

26.     Jurisdiction and venue are also proper in this district because the EA End User License Agreement ("EULA") contains a clause entitled "Governing Law" which expressly vests jurisdiction and venue for actions related to the Spore computer game and its EULA in the state and federal courts of California and this district:

> Unless expressly waived by EA in writing for the particular instance or contrary to local law, the sole and exclusive jurisdiction and venue for actions related to the subject matter hereof shall be the California state and federal courts having within their jurisdiction the location of EA's principal corporate place of business.  Both parties consent to the jurisdiction of such courts and agree that process may be served in the manner provided herein for giving of notices or otherwise as allowed by California or federal law.

**PARTIES**

27.     Plaintiff Melissa Thomas (Plaintiff) is a citizen and resident of Prince

Georges County, Maryland. Plaintiff purchased a copy of the Spore computer game. EA did not disclose that the Spore computer game contained an undisclosed, secret, separately installed, stand alone, uninstallable DRM program which would install itself to the command and control center of the computer and oversee function and operation on the computer, preventing certain user actions, preventing certain user programs from operating, or disrupting hardware operations. Plaintiff would not have purchased the computer game and/or paid as much for the computer game had she known the truth about the product. Plaintiff brings this action on behalf of herself and all others similarly situated.

28.   Defendant Electronic Arts has been and still is engaged in the business of designing, creating, marketing, distributing, and/or selling computer games. Defendant Electronic Arts is a Delaware Corporation with its principal offices at 209 Redwood Shores Parkway, Redwood City, CA 94065. Electronic Arts common shares trade on the NASDAQ (ERTS).

29.   Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 75, inclusive, and therefore, sues such defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiff is

informed and believes and based thereon allege that each of the fictitiously named Doe defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by plaintiff.

30. Plaintiff is informed and believes and based thereon allege that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

## CLASS ALLEGATIONS

31. Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and a class defined as follows:

> All persons or entities globally who purchased as an end-user a Spore computer game.
>
> Excluded from the class is defendant, any entity in which defendant has a controlling interest or which has a controlling interest

in defendant, and defendant's legal representatives, predecessors, successors, assigns, and employees.  Also excluded from the class are the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

32.    Plaintiff reserves the right to revise this definition of the class based on facts she learns during discovery.

33.    The EA End User License Agreement ("EULA") contains a clause entitled "Governing Law" as follows:

> 14. **Governing Law.** This License shall be governed by and construed (without regard to conflicts or choice of law principles) under the laws of the State of California as applied to agreements entered into and to be performed entirely in California between California residents.  Unless expressly waived by EA in writing for the particular instance or contrary to local law, the sole and exclusive jurisdiction and venue for actions related to the subject matter hereof shall be the California state and federal courts having within their jurisdiction the location of EA's principal corporate place of business. Both parties consent to the jurisdiction of such courts and agree that process may be served in the manner provided herein for giving of notices or otherwise as allowed by California or federal law.  The parties agree that the UN Convention on Contracts for the International Sale of Goods (Vienna, 1980) shall not apply to this License or to any dispute or transaction arising out of this License.

34.    The above Governing Law provision vests jurisdiction in the California state and federal courts in the district of the location of EA's principal corporate place of business (Redwood City, CA).  Thus, mandatory jurisdiction in this U.S. District Court vests for any purchaser of the Spore game, wherever

purchased, either within or outside of the United States, by virtue of the express

EA EULA terms. The above Governing Law provision also requires the

application of the laws of the State of California to be applied to any purchase or

use of the game anywhere, as if the game were purchased entirely in California and

used by California residents. Thus, citizens and residents of all states and all

countries other than the United States are, for all purposes related to this instant

Complaint, similarly situated with respect to their rights and claims as California

residents, and therefore are appropriately included as members of the Class,

regardless of their residence or place of purchase of the Spore computer game.

35.     Plaintiff is a member of the class that she seeks to represent.

Members of the class can be identified using records of retail sales and/or other

information that is kept by defendant in the usual course of business and/or in the

control of defendant. Class members can also be notified of the class action

through publication and direct mailings to address lists maintained in the usual

course of business by defendant.

36.     **Numerosity**: Class members are so numerous that their individual

joinder is impracticable. It is estimated that the Class consists of tens of thousands

of members. The precise number of class members is unknown to plaintiff, but it

is clear that the number greatly exceeds the number to make joinder impossible.

37.     Existence and predominance of common questions: Common

questions of law and fact predominate over the questions affecting only individual class members.  Some of the common legal and factual questions include:

a.     Whether EA fails to disclose the presence of an additional program on the Spore gamedisk;

b.     Whether EA should have separately disclosed the presence of an additional DRM program on the Spore gamedisk, and the extent and nature of that program;

c.     Whether defendant should have disclosed, and is liable for its failure to disclose, prior to the purchase of the SecuROM program, the precise details and nature of the program, where and how it would install, and how it would operate, prior to any installation of the program;

d.     Whether defendant should have disclosed, and is liable for its failure to disclose, prior to the installation of the SecuROM program, the precise details and nature of the program, where and how it would install, and how it would operate, prior to any installation of the program;

e.     Whether defendant should have obtain informed consent from the user, prior to the installation of the SecuROM program

f.     Whether defendant concealed crucial details concerning the

presence operation, function, and uninstallability of the SecuROM

DRM program to the class and the public;

g.     Whether defendant's actions in concealing crucial details

concerning the presence, operation, function, and uninstallability of

the SecuROM DRM program were likely to deceive the public;

h.     Whether defendant made representations that the Spore

computer game was of a particular standard or quality, which it did

not have;

i.     Whether defendant made representations that the Spore

computer game had characteristics, uses, benefits, or qualities which it

did not have;

j.     Whether, by its conduct, defendant has engaged in unfair or

unlawful business practices with respect to the advertising, marketing,

and sale of the Spore computer game;

k.     Whether, by its conduct, defendant has engaged in unfair,

deceptive, untrue, or misleading advertising of the Spore computer

game;

l.     Whether defendant violated consumer protection statutes and/or

state deceptive business practices statutes;

m.     Whether, by its conduct, defendant has trespassed on the

computers of all persons who installed the Spore computer game;

n.    Whether California law applies to all claims and claimants in this action; and

o.    The nature and extent of damages and other remedies to which the conduct of defendant entitles the class members.

38.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the class members. Similar or identical statutory and common law violations, deceptive business practices, and omissions regarding the product are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

39.    The injuries sustained by the class members flow, in each instance, from a common nucleus of operative facts. In each case, defendant designed, created, supplied, distributed, marketed, and/or sold the Spore computer game containing the second, undisclosed computer program.

40.    Class members have been damaged by defendant's misconduct. Class members have purchased Spore computer games containing an extra, undisclosed program that secretly installed onto their computers, without notice or opportunity for consent. Class members would not have purchased the Spore computer game and/or paid as much as they did had they known the truth about the product.

41.    **Typicality**: Plaintiff's claims are typical of the claims of the other

proposed class members.  Plaintiff purchased a Spore computer game designed and created by defendant which contained an undisclosed, secret, separately installed, stand alone, uninstallable DRM program which would install itself to the command and control center of the computer and oversee function and operation on the computer, preventing certain user actions, preventing certain user programs from operating, or disrupting hardware operations.

42.   **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff is familiar with the basic facts that form the bases of the proposed class members' claims.  Plaintiff's interests do not conflict with the interests of the other class members that she seeks to represent.  Plaintiff has retained counsel competent and experienced in class action litigation who will prosecute this action vigorously.  Plaintiff's counsel have successfully prosecuted complex actions including consumer protection class actions.  Plaintiff and plaintiff's counsel will fairly and adequately protect the interests of the class members.

43.   **Superiority**:  The class action device is superior to other available means for the fair and efficient adjudication of the claims of plaintiff and the proposed class members.  The relief sought per individual member of the class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of defendant.  Furthermore, it

would be virtually impossible for the class members to seek redress on an individual basis. Even if the class members themselves could afford such individual litigation, the court system could not.

44.     Individual litigation of the legal and factual issues raised by the conduct of defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.

45.     Given the similar nature of the class members' claims and the absence of material differences in the state statutes and common laws upon which the class members' claims are based, a nationwide class will be easily managed by the Court and the parties.

46.     The court may be requested to also incorporate subclasses of plaintiffs, defendants, or both, in the interest of justice and judicial economy.

47.     In the alternative, the class may be certified because:

a.     the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct by defendant;

b.     the prosecution of separate actions by individual class members

would create a risk of adjudications with respect to them which

would, as a practical matter, be dispositive of the interests of other

class members not parties to the adjudications, or substantially impair

or impede their ability to protect their interests; and

c.     defendant has acted or refused to act on grounds generally

applicable to the class, thereby making appropriate final and

injunctive relief with respect to the members of the class as a whole.

## FIRST CAUSE OF ACTION
### (Violations of Consumer Legal Remedies Act, Civil Code §§ 1750, et seq.)

48.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

49.    The California Consumer Legal Remedies Act ("CLRA") applies to defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods to consumers. Plaintiff and the members of the class are consumers who purchase goods (Spore computer games) from defendant for personal, family, or household purposes, and are "consumers" under Civil Code section 1761(d).

50.    The Spore computer games that plaintiff and each of the class members own are "goods" within the meaning of Civil Code section 1761(a).

51.    Defendant has violated the CLRA in at least the following respects:

a.    In violation of Section 1770(a)(5), defendant has represented

that the Spore computer game has characteristics, uses, approval, and

benefits it does not have;

b.  In violation of Section 1770(a)(7), defendant has represented that

the Spore computer game is of a particular standard, quality or grade,

or that goods are of a particular style or model, when it is not; and

c.  In violation of Section 1770(a)(14), defendant has represented that

the Spore computer game confers or involves rights, remedies, or

obligations which it does not have or involve, or which are prohibited

by law.

52.    Defendant concealed material facts regarding the Spore computer

games from plaintiff and the members of the class, including the fact that the Spore

computer games contained an undisclosed, secret, separately installed, stand alone,

uninstallable DRM program which would install itself to the command and control

center of the computer and oversee function and operation on the computer,

preventing certain user actions, preventing certain user programs from operating,

or disrupting hardware operations. Had defendant disclosed such information, it

would have been made known to plaintiff and members of the class through the

marketing and advertising presented to plaintiff and members of the class by

defendant, retailers, resellers, the trade press, and others.

53.    Defendant's failure to disclose the truth about Spore's companion DRM program, and defendant's conscious concealment of that fact, are unfair, misleading, and deceptive trade practices under the provisions of the CLRA, Civil Code § 1770 (a)(5), (7), and (14).

54.    Defendant's deceptive acts and omissions occurred in the course of selling a consumer product and have occurred continuously through the filing of this action.

55.    Plaintiff and the members of the class relied upon defendant to provide them with full and complete disclosure regarding the Spore gamedisk and all of its contents prior to installation of the programs on the gamedisk. Defendant intentionally failed to inform plaintiff and the members of the class of the full disk contents to their detriment. Plaintiff and the members of the class have all been directly and proximately injured by defendant's conduct, and such injury includes the purchase of Spore computer games, which they would not have purchased and/or would not have paid as much for were they truthfully and fully informed of material facts concerning the products.

56.    In accordance with Civil Code § 1780 (a), plaintiff and members of the Class seek injunctive and equitable relief as to defendant's violations of the CLRA; however, in accordance with Civil Code § 1782(a) & (d), plaintiff will subsequently amend this Class Action Complaint to include a request for damages.

Plaintiff requests that this court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as provided in Civil Code § 1780 and the Prayer for Relief.

## SECOND CAUSE OF ACTION
### (Violations of Unfair Competition Law, Business & Professions Code §§ 17200, et seq.)

57.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

58.     Plaintiff brings this cause of action on behalf of herself, the class, and in her capacity as a private attorney general.

59.     Defendant's actions, as complained of herein, constitute unfair, deceptive, and/or unlawful practices committed in violation of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq.

60.     Defendants violated the "fraudulent" prong of § 17200, the "unfair" prong of § 17200, and the "unlawful" prong of § 17200 by the conduct alleged herein.  Defendant's acts and practices have and/or are likely to deceive members of the consuming public.

61.     All of the conduct alleged herein occurred in the course of defendant's business.  Defendant's wrongful conduct was part of a pattern or generalized course of conduct repeated on thousands of occasions.

62.    Plaintiff and members of the class suffered injury in fact and lost money or property as a result of defendant's conduct because they would not have purchased the Spore computer game and/or paid as much for it had they known the true nature of all of the products on the gamedisk.

63.    Plaintiff, on behalf of herself and each member of the class, seeks individual restitution, injunctive relief, and other relief allowed under section 17200, et seq.

## THIRD CAUSE OF ACTION
### (Trespass to Chattels, Nuisance and Interference with Use of Property)

64.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

64.    Plaintiff and members of the class, at all times relevant to this action, were the owners and/or possessors of computers.

65.    Plaintiff and members of the class are informed and believe that, beginning in September 2008, Electronic Arts, without Plaintiff's and class members' consent, or in excess of any consent given, knowingly and intentionally accessed Plaintiff's and class members' property, thereby intermeddling with Plaintiff's and class members' right to possession of the property and causing injury to Plaintiff and the members of the class.

66.    Electronic Arts engaged in deception and concealment in order to gain

access to the computers of class members to install its SecuROM DRM Program.

67.    Electronic Arts undertook the following actions with respect to each class member's computer:

    a.    Electronic Arts accessed and obtained command control over the user's computer during the installation process;

    b.    Electronic Arts caused the installation of a new program onto the hard drive of the user's computer;

    c.    Electronic Arts programmed the installation to make changes and additions to the registry (the command center and heart of computer operations) of the user's computer.

    d.    Electronic Arts programmed the operation of its SecuROM program to function and operate without notice or consent on the part of the owner of the computer, and completely outside of the control of the owner of the computer.

68.    All these acts described above were acts in excess of any authority any user granted when he or she permitted Electronic Arts entry into their computers for purposes of installing the Spore computer game, since none of these acts was in furtherance of installing the Spore computer game. By engaging in deception and misrepresentation, whatever authority or permission users may have granted to Electronic Arts for purposes of installing the Spore computer game was

vitiated.

69.    Electronic Arts' installation and operation of its SecuROM program used, interfered, and/or intermeddled with Plaintiff's and Class members' computer systems.   Such use, interference and/or intermeddling was without Class members' consent or, in the alternative, in excess of Plaintiff's and Class members' consent.

70.    Electronic Arts' installation and operation of its SecuROM program constitutes trespass, nuisance, and an interference with Class members' chattels, to wit, their computers.

71.    Electronic Arts' installation and operation of its SecuROM program impaired the condition and value of Class members' computers.

72.    Electronic Arts' trespass to chattels, nuisance, and interference caused real and substantial damage to Plaintiff and the other Class members.

73.    As a direct and proximate result of Electronic Arts' trespass to chattels, nuisance, interference, unauthorized access of and intermeddling with Plaintiff's and Class members' property, Plaintiff and Class members have been injured and impaired in the condition and value of Class members' computers, as follows:

    e.    By consuming the resources of and/or degrading the performance of Class members' computers (including hard drive space, memory, processing cycles, and Internet connectivity);

f.  By diminishing the use of, value, speed, capacity, and/or capabilities of Class members computers;

g.  By devaluing, interfering with, and/or diminishing Class members' possessory interest in their computers;

h.  By altering and controlling the functioning of Class members' computers;

i.  By infringing on Class members' right to exclude others from their computers;

j.  By infringing on Class members' right to determine, as owners of their computers, which programs should be installed and operating on their computers;

k.  By tying Class members' right to utilize the Spore computer game upon the undisclosed, uninformed, secret installation of a second program;

l.  By compromising the integrity, security, and ownership of class members' computers because the SecuROM program can be used by Electronic Arts or others to remotely control, reduce, or alter the functioning of class members' computer programs, specifically the Spore computer game; and

m.  By forcing consumers to expend money, time, and resources in

order to effectuate the removal of the SecuROM program installed

on the computers of Class members without notice or consent.

74.    By virtue of the Governing Law provision in Electronic Arts' EULA,

all class members, regardless of where they reside, regardless of where they made

their purchase of the Spore computer game, and regardless of physical location of

the computers upon which the trespass was perpetrated, are all equally and

identically governed by California Law as it is applied to California residents,

therefore a global trespass class may be certified using California law as it is

applied to California residents.

75.    Plaintiff, on behalf of herself and the Class, seeks injunctive relief

restraining Electronic Arts from trespass to chattels, to provide an easy-to-use

uninstall tool for the SecuROM program, and damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff and the proposed class members request that the

Court enter an order or judgment against defendant including the following:

1.    Certification of the action as a class action pursuant to Rule

23(b)(2) of the Federal Rules of Civil Procedure with respect to

plaintiff's claims for injunctive relief, and Rule 23(b)(3) of the

Federal Rules of Civil Procedure with respect to the claims for

damages, and appointment of plaintiff as class representative and her

counsel of record as class counsel;

2.      Damages in the amount of monies paid for Spore games (for

purposes of clarity, Plaintiff expressly disclaims damages pursuant to

the CLRA at this time);

3.      Actual damages, statutory damages, punitive or treble damages,

and such other relief as provided by the statutes cited herein (for

purposes of clarity, Plaintiff expressly disclaims damages pursuant to

the CLRA at this time);

4.      For pre-judgment and post judgment interest according to

proof;

5.      Equitable relief in the form of restitution and/or disgorgement

of all unlawful or illegal profits received by defendant as a result of

the unfair, unlawful and/or deceptive conduct alleged in herein;

6.      Other appropriate injunctive relief;

7. .    The costs of bringing this suit, including reasonable attorneys'

fees; and

8.      All other relief to which plaintiff and members of the proposed

class may be entitled at law or in equity.

1
2
3
4

### JURY TRIAL DEMAND

5

The Plaintiff hereby demands a trial by jury of all issues so triable.

6

7       DATED this 22nd day of September, 2008.

8

9                                    By:   Alan Himmelfarb

10

11    Alan Himmelfarb
      KamberEdelson, LLC
12    2757 Leonis Blvd
13    Vernon, California 90058-2304
      Telephone: (323) 585-8696
14    ahimmelfarb@kamberedelson.com

15
      Scott A. Kamber
16    KamberEdelson, LLC
      11 Broadway, 22nd Floor.
17    New York, NY. 10004
      Telephone: (212) 920-3072
18    Fax: (212) 202-6364
      skamber@kamberedelson.com
19
      Oren Giskan
20    Giskan & Solotaroff
21    11 Broadway, Suite 2150
      New York, New York 10004
22    Telephone: (212) 847-8315

23
24
25
26
27
28